## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHRISTOPHER BEVERIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ELLIE MAE, INC., SIGMUND ANDERMAN, | ) | |
| JONATHAN H. CORR, KAREN BLASING, | ) | |
| CARL BUCCELLATO, CRAIG DAVIS, A. | ) | |
| BARR DOLAN, ROBERT J. LEVIN, MARINA | ) | |
| LEVINSON, JEB S. SPENCER, and RAJAT | ) | |
| TANEJA, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Ellie Mae, Inc. ("Ellie Mae" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Ellie Mae, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed acquisition of Ellie Mae by EM Eagle Purchaser, LLC and EM Eagle Merger Sub, Inc., affiliates formed by Thoma Bravo Fund XIII, L.P. (collectively, "Thoma Bravo") (the "Proposed Transaction").

2.      On February 11, 2019, Ellie Mae entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Thoma Bravo will acquire Ellie Mae in an all cash transaction valued at $3.7 billion.  Ellie Mae's stockholders will receive $99.00 in cash per share for each share of Ellie Mae common stock they hold (the "Merger Consideration").

3.      On March 15, 2019, in order to convince Ellie Mae public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Definitive Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Ellie Mae; and (ii) the valuation analyses performed by Ellie Mae's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan").

5.      The special meeting of Ellie Mae's shareholders to vote on the Proposed Transaction is scheduled for April 15, 2019, and consummation of the Proposed Transaction will follow thereafter (the "Shareholder Vote").  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Ellie Mae's shareholders can properly exercise their corporate voting rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Ellie Mae's public common shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

2

## JURISDICTION AND VENUE

7.　　This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8.　　Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.　"Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).　"[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.　　Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.　Indeed, Ellie Mae's common stock trades on the New York Stock Exchange, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.　　Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Ellie Mae common stock.

11.　　Defendant Ellie Mae is a public company incorporated under the laws of Delaware with principal executive offices located at 4420 Rosewood Drive, Suite 500, Pleasanton California.

Ellie Mae's common stock is traded on the New York Stock Exchange under the ticker symbol "ELLI."

12.     Defendant Sigmund Anderman is, and has been at all relevant times, a director of the Company and Executive Chairman of the Board.

13.     Defendant Jonathan H. Corr is, and has been at all relevant times, a director of the Company and its President and Chief Executive Officer.

14.     Defendant Karen Blasing is, and has been at all relevant times, a director of the Company.

15.     Defendant Carl Buccellato is, and has been at all relevant times, a director of the Company.

16.     Defendant Craig Davis is, and has been at all relevant times, a director of the Company.

17.     Defendant A. Barr Dolan is, and has been at all relevant times, a director of the Company.

18.     Defendant Robert J. Levin is, and has been at all relevant times, a director of the Company.

19.     Defendant Marina Levinson is, and has been at all relevant times, a director of the Company.

20.     Defendant Jeb S. Spencer is, and has been at all relevant times, a director of the Company.

21.     Defendant Rajat Taneja is, and has been at all relevant times, a director of the Company.

22.     The defendants identified in paragraphs 12 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Ellie Mae, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

23.     Ellie Mae is a cloud-based platform provider for the mortgage finance industry. According to its website, Ellie Mae's technology solutions enable lenders to originate more loans, lower origination costs, and reduce the time to close, all while ensuring the highest levels of compliance, quality and efficiency.

24.     On February 11, 2019, the Board caused the Company to enter into the Merger Agreement with Thoma Bravo.

25.     Pursuant to the terms of the Merger Agreement, Thoma Bravo, upon the terms and subject to the conditions set forth in the Merger Agreement, will acquire Ellie Mae for $3.7 billion in cash.  Specifically, Ellie Mae's stockholders will receive $99.00 in cash for each share of Ellie Mae common stock they hold.

26.     According to the February 12, 2019 press release announcing the Proposed Transaction:

> *Ellie Mae Stockholders to Receive $99.00 Per Share in Cash; Ellie Mae to Continue Driving Mortgage Finance Innovations as a Privately Held Company*
>
> PLEASANTON, Calif. – Feb. 12, 2019 – Ellie Mae® (NYSE:ELLI), the leading cloud-based platform provider for the mortgage finance industry, announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, LLC, a leading private equity investment firm, in an all-cash transaction that values Ellie Mae at an aggregate equity value of approximately $3.7 billion.
> Under the terms of the agreement, all Ellie Mae shareholders will receive $99.00 in cash per share. The price per share represents a 47 percent premium to the 30-day average closing share price and 49 percent premium to the 60-day average closing price as of February 1, 2019.
>
> "Since the founding of Ellie Mae more than 20 years ago, our mission has been simple – to automate everything automatable for the residential mortgage industry," said Jonathan Corr, president and CEO of Ellie Mae. "As we enter this next phase of our digital mortgage journey, we are thrilled to provide immediate value to our shareholders. With the investment and

support from Thoma Bravo, we will remain committed to our customers' success, innovation and growth of the Encompass Digital Lending Platform while maintaining our position as a best place to work."

"Ellie Mae delivers powerful and innovative mortgage technology solutions across every channel of the residential mortgage sector, enabling lenders to originate more loans while reducing costs and driving efficiency, quality and compliance throughout the mortgage process," said Holden Spaht, a Managing Partner at Thoma Bravo. "Ellie Mae is leading the digital transformation of the residential mortgage industry and we look forward to building on the company's successes and to our partnership through this next chapter of growth."

Ellie Mae's Board of Directors unanimously approved the definitive agreement and recommended that stockholders vote their shares in favor of the transaction. Ellie Mae's headquarters will remain in Pleasanton, California, with regional offices across the United States. Closing of the transaction is subject to approval by Ellie Mae stockholders and regulatory authorities and the satisfaction of customary closing conditions. The transaction is expected to close in the second or third quarter of 2019 and is not subject to a financial condition.

The agreement includes a 35 day "go-shop" period, which permits Ellie Mae's Board and advisors to actively initiate, solicit, encourage, and potentially enter negotiations with parties that make alternative acquisition proposals. Ellie Mae will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this 35 day "go-shop" will result in a superior proposal, and Ellie Mae does not intend to disclose developments with respect to the solicitation process unless and until the Board makes a determination requiring further disclosure.

J.P. Morgan Securities LLC is serving as the exclusive financial advisor to Ellie Mae and Cooley LLP is serving as the legal advisor to Ellie Mae. Jefferies LLC served as financial advisor to Thoma Bravo and Kirkland & Ellis LLP served as legal advisor to Thoma Bravo. Financing for the transaction is being provided by Jefferies Finance LLC.

(Emphasis in original).

**The Proxy Omits Material Information**

27.     On March 15, 2019, Defendants filed a materially incomplete and misleading Proxy

with the SEC.  The special meeting of Ellie Mae stockholders to vote on the Proposed Transaction

is forthcoming.  The Individual Defendants were obligated to carefully review the Proxy before it

was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

28.     First, the Proxy fails to provide enough information regarding financial projections for the Company.  In particular, the Proxy fails to disclose: (i) all line items underlying Ellie Mae's unlevered free cash flows; (ii) all line items used to calculate Ellie Mae's Adjusted EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.  Second, the Proxy omits material information regarding J.P. Morgan's financial analyses.

29.     Investors are concerned, perhaps above all else, with the projections and cash flows of the companies in which they invest.  Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation Accordingly, the question that the Company's shareholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear:  Is the Merger Consideration fair compensation given Ellie Mae's projected cash flows?  Without the line items underlying Ellie Mae's unlevered free cash flows the Company's shareholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration.

30.     Defendants' failure to disclose all line items used to calculate Adjusted EBITDA and a reconciliation of all non-GAAP to GAAP metrics similarly renders the Proxy materially misleading.

31.     If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then

known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th

Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities

laws and collecting cases). Accordingly, Defendants have disclosed some of the information related

to the projections relied upon by J.P. Morgan, but have omitted crucial line items and reconciliations.

Thus, Defendants' omission renders the projections disclosed on page 48 of the Proxy misleading.

32.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy is also

materially misleading and incomplete because it fails to disclose the inputs and assumptions

underlying the selection of the range of discount rates from 9.0% to 10.0% and the terminal growth

rates underlying the selection of the 2.5% to 3.5% terminal multiples. *See* Proxy at 45-46. Moreover,

J.P. Morgan's *Discounted Cash Flow Analysis* is based on unlevered free cash flows, but omits the

critical line items as discussed above, nor does the *Discounted Cash Flow Analysis* disclose the fully

diluted shares outstanding of Ellie Mae.

33.     These key inputs are material to Ellie Mae shareholders, and their omission renders

the summary of J.P. Morgan's *Discounted Cash Flow Analysis* incomplete and misleading. As one

highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow

analysis a banker takes management's forecasts, and then makes several key choices "each of which

can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L.

Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal

value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can*
> *markedly affect the discounted cash flow value. For example, a change in*
> *the discount rate by one percent on a stream of cash flows in the billions of*
> *dollars can change the discounted cash flow value by tens if not hundreds*
> *of millions of dollars….This issue arises not only with a discounted cash*
> *flow analysis, but with each of the other valuation techniques. This dazzling*
> *variability makes it difficult to rely, compare, or analyze the valuations*
> *underlying a fairness opinion **unless full disclosure is made of the various***
> ***inputs in the valuation process, the weight assigned for each, and the***
> ***rationale underlying these choices**. The substantial discretion and lack of*

> guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Ellie Mae's shareholders cannot evaluate for themselves the reliability of J.P. Morgan's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by J.P. Morgan, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

34.     J.P. Morgan's *Equity Research Analyst Price Targets* analysis on page 46 of the Proxy is also materially misleading.  Specifically, it fails to disclose the critical price targets for Ellie Mae or the sources thereof.

35.     The *Transaction Multiples Analysis* prepared by J.P. Morgan on page 46 of the Proxy is similarly insufficient and materially misleading.  In particular, the analysis fails to describe the key characteristics of the businesses which "J.P. Morgan judged to be sufficiently analogous to the business of Ellie Mae or aspects thereof" in selecting such companies for the *Transaction Multiples Analysis*.

36.     Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

37.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

41.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

42.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Ellie Mae; and (ii) the valuation analyses performed by J.P. Morgan in support of its fairness opinion.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

44.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that J.P. Morgan reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by J.P. Morgan, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review J.P. Morgan's analyses in connection with their receipt of the fairness opinions, question J.P. Morgan as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

45.     The Individual Defendants were, at the very least, negligent in preparing and

reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

46.     Ellie Mae is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

47.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Ellie Mae within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Ellie Mae, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination

12

of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were thus directly involved in preparing this document.

52.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.     Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 18, 2019

**Monteverde & Associates PC**

By:  */s/ Juan E. Monteverde*
      Juan E. Monteverde (JM-8169)
      The Empire State Building
      350 Fifth Avenue, Suite 4405
      New York, NY 10118
      Tel:(212) 971-1341
      Fax:(212) 202-7880
      Email: jmonteverde@monteverdelaw.com

      *Attorneys for Plaintiff*